```
Ali Parvaneh, SBN 218320
James S. Sifers, SBN 259105
MADISON HARBOR, ALC
17702 Mitchell North
Irvine, California 92614
Telephone: 949-756-9050
Facsimile: 949-756-9060
```

FILED
2013 SEP -9 PM 2: 13
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY_____

Attorney for Plaintiff James River Holdings Corporation

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JAMES RIVER HOLDINGS CORPORATION<br><br>Plaintiff,<br><br>vs.<br><br>ANTON & CHIA, LLP, aka ANTON & CHIA CPA'S, and DOES 1 through 10, inclusive,<br><br>Defendants, | Case No.: **SACV13-01396 DOC (DFMx)**<br><br>COMPLAINT FOR:<br>1. BREACH OF WRITTEN CONTRACT<br>2. FRAUD<br>3. UNJUST ENRICHMENT<br>4. MALPRACTICE<br>5. CONVERSION<br><br>UNLIMITED JURISDICTION<br><br>JURY TRIAL REQUESTED |

COMES NOW PLAINTIFF, James River Holdings Corporation, by and through its undersigned counsel hereby sues Defendant, Anton & Chia LLP, aka Anton & Chia CPA'S, and for its complaint states as follows:

///

///

///

---

COMPLAINT
1

## JURISDICTION

1. This Court has federal diversity jurisdiction pursuant to 28 U.S.C. SS 1332 because the defendant in this case is a resident of California, the plaintiff in this case is a resident of Missouri, and plaintiff is suing for actions of defendant that were either done in California, or put them at risk of being sued in California, and the plaintiff has damages in excess of $75,000.00.

## VENUE

2. Venue is proper because a substantial part of the events happened in this District of Orange County, in the Central District of California, which is Defendant's home state.

## PARTIES

3. Comes now Plaintiff James River Holdings Corporation (hereinafter "JRH" residing in Springfield, MO) before this court to seek satisfaction and damages against Defendant Anton & Chia LLP, aka Anton & Chia CPA'S (hereinafter "A&C" residing in Newport Beach, CA), and doing business in Orange County, CA for breach of written contract, conversion, malpractice and, as plead in the alternative, unjust enrichment.

## FACTS

4. JRH is a Missouri Corporation with its corporate headquarters located in Springfield, Missouri.

5. JRH is publicly traded company, and its stock is traded over the counter.

6. As a publicly traded company, JRH is required to have financial audits performed yearly for the purpose of SEC filings.

7. A&C is a Certified Public Accounting Firm with its head office located at 4400 MacArthur Blvd, Suite 970, Newport Beach, CA 92660.

8. JRH was first introduced to A&C on or about Thursday, February 21, 2013. During February, JRH and A&C had detailed correspondence and conversations wherein A&C assured JRH that A&C understood the nature of JRH's business and had the time, knowledge, and ability to complete the audit of JRH before March 31, 2013.

9. A&C represented to JRH that its team was qualified and experienced.

10. In reasonable reliance upon the representations of A&C, on or about March 5, 2013, JRH retained A&C to perform its audit, executed an engagement agreement with A&C and paid fees to A&C totaling $13,000.00 (U.S.).

11. The total amount of the agreement for the Audit was $26,000.00 (U.S.) with $13,000.00 (U.S.) paid at the time of the parties executing the agreement. The remaining $13,000.00 (U.S.) was due upon completion of the audit.

12. On March 6, 2013, A&C provided JRH with a request for documents. JRH promptly provided all requested documents and information to A&C.

13. On March 12 and 13, A&C acknowledged receipt of the documents and thanked JRH for promptly responding.

14. Between March 13, 2013, and the March 31st deadline, A&C did not request any additional information from JRH.

15. In fact, just the opposite, on March 19, 2013, A&C fraudulently misrepresented to JRH that the audit was completed and the only thing holding up its release was receipt of the final payment.

16. A&C requested that JRH remit the final $13,000 payment.

17. JRH asked A&C to clarify the request for payment, asking if the audit was completed. A&C fraudulently misrepresented the status of the audit and responded that the request was, indeed, for the final payment and that its policy was not to release the audit until the final payment was received, implying that receipt of payment was the only thing stopping the release of the audit.

18. On or about March 25, 2013, JRH, reasonably relying on A&C's misrepresentation that the audit was complete, mailed the final payment in the amount of $13,000 to A&C.

19. On March 25, 2013, JRH also confirmed with A&C that it had provided all requested documents and reiterated its willingness to provide any other information necessary.

20. A&C failed to provide the promised audit or any other correspondence by the due date of March 31, 2013.

21. A&C's failure to provide the audit by the March 31, 2013 deadline was a breach of contract.

22. As a direct and proximate result of A&C's failure to provide the audit by the deadline, JRH was forced to incur additional attorneys fees with its SEC attorney and suffered damages with its investors.

23. As a direct and proximate result of A&C's failure to provide the audit by the deadline, JRH's SEC counsel was forced to obtain an extension for the SEC filings.

24. On April 2, 2013, after the deadline, JRH requested an update on the status of the audit.

25. A&C's response indicated that A&C, not only did not have the audit completed, but had not even begun a review of the documents previously provided.

26. On April 3, 2013, A&C indicated that it had not performed any work on the audit, acknowledging that it did not have any knowledge of the nature of JRH's business.

27. Contrary to A&C's earlier misrepresentations, it is clear that A&C did not begin working on the audit until after the conference call on April 3, 2013.

28. Following April 3, 2013, A&C made numerous duplicative requests to JRH, all of which were promptly answered by JRH.

29. On April 8, 2013, JRH confirmed with A&C that it had provided all requested information except one item which was being sought.

30. The same day, April 8, 2013, JRH confirmed with A&C that it had provided the outstanding item.

31. Between April 8 and April 12, 2013, A&C did not request any additional information or advise JRH that it was missing any information.

32. A&C had assured JRH's SEC counsel that it would have the audit completed by Friday, April 12, 2013 so that JRH's counsel could prepare its SEC filings now due on the extended date of April 15, 2013.

33. A&C again failed to complete the audit by the newly promised deadline.

34. On Friday, April 12, 2013, JRH again confirmed with A&C that it had provided all requested information and that its officers would be unavailable over the weekend.

35. On the weekend of April 13-14, 2013, after the second deadline, A&C requested creditor contact information so it could reach out to creditors and ask for written confirmation from them. This was the first such request.

36. When A&C made the request for creditor contact information it knew that JRH's offices were closed and its officers were unavailable.

37. When A&C made the request for creditor contact information it knew that creditors would not respond prior to the Monday SEC filing deadline.

38. A&C did not notify JRH of its inability to timely perform JRH's audit, and specifically represented that it could perform the audit in time for the SEC filings.

39. During the time frame when A&C was supposed to be performing JRH's audi, David Ruan, the partner at A&C with whom JRH had dealt, left A&C.

40. A&C concealed from JRH the departure of David Ruan.

41. A&C assigned an inexperienced, unqualified auditor to JRH.

42. A&C did not properly supervise said auditor and concealed said auditor's inability and lack of qualifications from JRH.

43. The auditor assigned had no understanding of JRH's business or any understanding of basic business concepts.

44. The auditor assigned repeatedly contacted JRH's CPA asking for an explanation of basic business practices.

45. JRH incurred increased costs from its CPA as a direct and proximate result of A&C's failure to assign a qualified auditor to the work.

46. Contrary to the representations made, A&C did not have the time, the knowledge, or the ability to complete the audit.

47. After the second deadline had passed, JRH's counsel contacted A&C demanding that the audit be completed.

48. A&C responded by refusing to complete the audit and terminating the agreement.

49. A&C did not complete JRH's audit before or after March 31, 2013.

COMPLAINT
4

50. Due to A&C's failure to complete JRH's financial audit, JRH was forced to incur additional accounting and legal expenses.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT AND/OR UNJUST ENRICHMENT

(By Plaintiff against all Defendants)

51. Plaintiff realleges paragraphs 1 through 50.

52. The parties entered into a written agreement on or about March 5, 2013 for A&C to complete a financial audit for JRH on or before March 31, 2013.

53. A&C did not complete a financial audit for JRH on or before March 31, 2013, as agreed.

54. A&C did not complete a financial audit for JRH at any time after March 31, 2013.

55. A&C breached the agreement between the parties when it did not complete the financial audit for JRH.

56. A&C breached the agreement between the parties when it failed to assign an experienced auditor to the work.

57. A&C breached the agreement between the parties when it demanded payment of the final auditing fees before the audit was complete.

58. A&C was unjustly enriched, because A&C accepted and retained fees for said uncompleted audit and did not return those funds.

59. By doing the acts described above, A&C breached its agreement with JRH entitling plaintiff to recover damages pursuant to breaches of contract claims or, as plead in the alternative, unjust enrichment, in an amount to be proven at trial.

### SECOND CAUSE OF ACTION

### CONVERSION

(By Plaintiff against all Defendants)

60. Plaintiff realleges paragraphs 1 through 50.

61. Under the terms of the parties' agreement, defendant was not entitled to the final $13,000 payment until the audit was completed.

62. At the time that A&C demanded the final $13,000 payment, the audit was not complete.

63. Defendant's representation that the audit was complete was false.

64. Defendant made the demand for the final payment to trick plaintiff into providing defendant with funds to which it was not entitled.

65. A&C received from JRH funds which A&C was not entitled to retain.

66. A&C exercised dominion and control over the funds.

67. Upon information and belief, A&C converted the funds to its own use.

68. After defendant refused to complete the audit and terminated the agreement, JRH demanded a return of the funds provided.

69. After defendant refused to complete the audit and terminated the agreement, JRH demanded an accounting of the funds provided.

70. A&C refused to return the funds or provide an accounting of the funds.

71. A&C's conduct as set forth above amounts to a fraudulent scheme designed to secure JRH's money by means of trickery and deliberate falsehood.

72. A&C's conduct as set forth above has caused damages to JRH.

73. JRH is entitled to a judgment for actual damages and punitive damages in amounts to be proven at trial.

## THIRD CAUSE OF ACTION

## FRAUD

(By Plaintiff against all Defendants)

74. Plaintiff realleges paragraphs 1 through 50 and 60 through 73.

75. When JRH had discussions with A&C in late February, 2013, JRH made it clear to A&C that it required an auditing firm capable of completing the audit before March 31, 2013.

76. A&C fraudulently represented to JRH that it could and would complete the audit before March 31, 2013.

77. At the time A&C made the representations to JRH, it knew that it could not complete the audit by March 31, 2013.

78. At the time A&C made the representations to JRH, A&C had no intention of completing the audit before March 31, 2013.

79. A&C made the representations to JRH to induce JRH to enter into a contract with it and forego hiring another firm.

80. Defendants falsely, fraudulently and with the intent to deceive induced Plaintiff to enter into an agreement to complete a financial audit.

81. Defendants knew their representations were false and fraudulent when they entered into the agreement with Plaintiff.

82. A&C made further misrepresentations to JRH, as set forth above, to induce JRH to make a second payment to A&C.

83. Defendants falsely, fraudulently and with the intent to deceive induced Plaintiff to make the final $13,000 payment to A&C.

84. Defendants knew their representations were false and fraudulent when they requested the final $13,000 payment.

85. Due to Plaintiff's reliance upon Defendants' false and fraudulent statements, Plaintiff has suffered damages in excess of $75,000.00.

86. JRH is entitled to actual damages and punitive damages in amounts to be proven at trial.

## FOURTH CAUSE OF ACTION

## MALPRACTICE

(By Plaintiff against all Defendants)

87. Plaintiff realleges paragraphs 1 through 86.

88. A&C entered into an agreement with JRH to complete a financial audit.

89. A&C did not have the time, the knowledge, or the ability to complete the audit.

90. A&C did not complete JRH's audit before or after March 31, 2013.

91. A&C did not complete JRH's audit at any time.

92. A&C owed JRH a duty to properly assess its workload and knowledge base and accurately disclose to JRH its ability to timely complete the audit.

93. A&C breached this duty to JRH in failing to properly disclose its workload and knowledge base.

94. A&C had a duty to complete JRH's financial audit in a timely manner.

95. A&C breached this duty to JRH in failing to complete the audit.

96. A&C owed JRH a duty to diligently perform the work for which it contracted.

97. A&C breached this duty to JRH in not beginning the audit until after the deadline.

98. A&C owed a duty to JRH to communicate with JRH regarding the progress of the audit.

99. A&C breached this duty to JRH by failing to communicate the status of the audit and misrepresenting to JRH that the audit was complete.

100. A&C owed a duty to JRH to properly train and supervise the employees assigned to JRH's audit.

101. A&C breached this duty to JRH by assigning an inexperienced, unqualified auditor and by failing to properly train and supervise the employees assigned to JRH's audit.

102. A&C had a duty of care to protect its client, JRH.

103. A&C breached this duty by its conduct as set forth above.

104. Had A&C properly performed its duties to JRH, A&C would not have placed JRH in a detrimental position with the SEC and with JRH's shareholders.

105. Even though A&C knew JRH was required to make filings with the SEC based on A&C's financial audit, A&C failed to communicate, research or act upon that information.

106. In so doing, A&C neglected its professional duty to be diligent in its research and neglected its professional duty of care (negligence in malpractice).

107. A&C's failures resulted in JRH being unable to make its filings with the SEC timely, thus causing the Plaintiff to suffer further damages including but not limited to additional accounting and legal expenses, damage to its relationship with its investors, and damage to its standing on the stock exchange.

108. A&C is also guilty of malpractice by deceit or neglect. A&C induced JRH to enter into and agreement with A&C and to pay A&C fees even though A&C had full knowledge that it was unable and incapable of completing JRH's financial audit.

109. A&C was negligent in the training and supervision of its inexperienced, unqualified auditor.

110. Additionally, A&C fraudulently concealed its inability to timely perform the audit and the departure of David Ruan.

111. As of the filing of this action, current damages to JRH as a direct and proximate result of A&C's malpractice are in excess of $75,000.00.

112. JRH is entitled to judgment for damages in an amount to be proven at trial.

### REQUEST FOR RELIEF

WHEREFORE, JRH respectfully requests that this Court enter judgment for JRH and against A&C, awarding JRH actual and punitive damages, the costs of this action, post judgment interest, and for all other and further relief this Court deems appropriate.

WHEREFORE: Plaintiff prays for judgment as follows:

I. For general damages in an amount to be proven at the time of trial;

II. For special damages in an amount to be proven at the time of trial;

III. For a declaration of rights declaring Plaintiff purchase of the Shares null and void, and putting each of the parties back in their original positions;

IV. For the imposition of a resulting trust on the funds provided by Plaintiff to Defendants;

V. For the imposition of a constructive trust on the funds provided by Plaintiff to Defendants;

VI. For cost of suits herein, incurred, including reasonable attorneys' fees to the extent permitted by law and/or contract; and

VII. For all other and further relief that the court deems proper and just.

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

1 | Respectfully submitted on this 9th day of September, 2013, by:

MADISON HARBOR, ALC

Ali Parvaneh,
Attorney for Plaintiff